The next case is number 123622, McCarthy v. Reynolds, Declaration of Living Trust, and Marvin Gray, agenda number 13. Mr. Gray, if you're ready, you may proceed. My name is Marvin Gray, and let me at the outset thank you, thank the court, for granting the official release appeal. I say that because my research, the issue in this matter is sparse. It shows its head rarely, and I think that's the reason why the issue arose, because the Supreme Court in the past, I think in 1989, ruled a certain way with respect to pro se attorneys. And that ruling took on a headwind, and cases arose thereafter in connection therewith that became its project. What occurred here was something of a surprising occurrence. Trust occurred, a suit was filed against the trustees because of handwritten interlineations. The plaintiff felt they were invalid, he lost. He went to the federal court, he lost there. He appealed to you, and you rejected his PLA. I was involved in the case as a witness because I wrote the original trust. And when the decedent came to me some ten years later, I believe, saying he wanted to change it, I said fine, bring it by my house on a Friday, Saturday morning. I'll change it next week by typewriter. He brought by the changes that he had handwritten, he had made the changes by hand. My thinking was I'll change them on Monday, get the new typewritten document back to him quicker. He goes, leaves my house, and summarily kills himself that afternoon. Changes that he made mainly involved his new girlfriend, because his old girlfriend who had been the main beneficiary had passed on. But he also changed the beneficiary shares of this plaintiff before us. The prior trust, typewritten trust, gave Mr. McCarthy a certain percentage. The handwritten changed trust reduced that percentage. So after filing suit against the trustee and other beneficiaries and losing, he then filed suit against me and the trustee. Pro se. And I'm considering what have I done to deserve being indefendent here? But he alleges that I conspired with the trustee to diminish his shares. And that I was, I think his phrase was, it interfered with his expectancy. Tortious interference with his expectancy, which the appellate court finally reduced down to saying that basically, well, Justice, if I had the first trial, I misguided the court, lied in testimony. So, Justice, I've been involved in the case. I was involved in this matter realizing fallacy of allegations. I didn't hire a lawyer because I recognized this has no merit. I found immediate motion to dismiss. Justice McConnell granted the motion with respect to the tortious interference, which she transmuted to him saying that I lied to him in the first trial. But then he also accounts saying that I owed a duty to him as a beneficiary. I owed a duty to him. I represent the trust. I represent the trustee, but he's saying I owed a duty to him. And by not fulfilling that duty, his shares were diminished. And they were only diminished by virtue of the proceedings' handwritten interventions. I'm impressed with that, too. That has no merit? A modicum of research would have proved that. Although, I must say, a modicum of research all down the line would have shown him his positions were unfounded. A modicum of research would have shown him that handwritten changes on a trust document can be valid and by themselves, by being handwritten alone, are not invalid. And certainly, even less research would show him that as the attorney for the trust, I owe him no duty as a beneficiary, especially when he files suit against the trust. I mean, it's remarkable. He files suit against the trust and then alleges that as I work to defend the trust, I owe him a duty at the same time. Ultimately, that second amendment complaint was dismissed. Now, this is taking time. This is taking time. I'm a practicing lawyer in Chicago, and at this point have been for 46 years. I'm not one of the biggest lawyers in Chicago, but I've been living for myself and my family. I could have done one or two things. Hear these allegations and do nothing. He's filing pro se actions against me, which I know have no merit. Do I hire a lawyer and pay the money for that lawyer to get up to speed, to know that which I know about this matter, and then have him deal with it? I'm saying to myself, well, he's pro se. Can I not be also pro se? And I proceeded to defend myself against those allegations pro se. And because it all took time, and because I kept records, as I do in all of my cases, I kept close, copious records of my time expended, it occurred to me it's only proper that something happened that the time I've spent, the expenses I've spent, most of the time at that point, though, he'd be made to answer for this time. And so I present the petition for attorney's fees to Judge Patrick. The judge allowed various amendments. He, Mr. McCarthy, filed a responsive plea, and through the amendments allowed back and forth, even more time was spent. So finally, and it's an involved case. It's really not that wide of an issue, but the case and its activity is rather involved. And the court became a bit confused in terms of what count she was dealing with. I dismissed the second count because he, Mr. McCarthy, persisted, and that word is very important, persisted in filing over and over again saying I owe the duty to the trust, I'm sorry, duty to him as trustee, and Mr. McCarthy did not bring forth, as I pointed out to the court, the special circumstances where in some narrow cases there may be something a lawyer owes to a trustee, but he never alleged those circumstances. Never. He never did in the first place, and when she suggested to him there are certain situations where there may be some responsibility toward you, and I don't see then he would go back and come back with a plea and still would not allege. She finally dismissed the entire thing, and she read in my terms. Now, you might have noticed, with respect to the fees, which are not very much, that which she dismissed based on race to the top, she said you may not be due fees for that. But the tortious interference happened. I believe she said it was properly subject fees. I hope I'm not getting those two mixed up. In any case, because of her reservation about my full fee claim, trying to be reasonable, I go back and I reduce the claim. Because I'm thinking, well, some of it was so summarily dealt with, maybe it's not a proper claim subject. But I also talked about and added on to the time I'm spending dealing with this after the dismissal. She agreed and finally granted some fees and found that his actions were unfounded. His pleadings were improper and all dismissible. The appellate court considered it all very carefully and produced and issued a very comprehensive decision. Except on one respect. The fee situation. The fee claim. And that was based, again, as I mentioned at the beginning, on her. A hammer case. Now, in the hammer case, apparently there was some concern that Tony's fees were subject to three kinds of concerns. Number one, in the case of FOIA cases, freedom of information cases, where a lawyer sought to get information from an agency under the Freedom of Information Act, that the court did not want fees to become a burden or get in the way of that effort. And number two, where those – the second consideration was where the lawyer – I've already forgotten that now. I'm very sorry about that. And the third was the opportunity to go forth and generate fee-generating activity and be paid more than once. Momentarily I've forgotten the second provision. But that was based on – it almost sounded like, in hindsight, you were confined to two freedom of information cases. But it was later considered to be applicable to other cases. But the appellate court cited hammer and cited ten cases – nine or ten cases of other cases. And when I went through them, I was surprised at the hammer decision in the first place because it seemed to me, in my situation, in my situation, it would only be right, proper, and true that fees be allowed. But when I went through all the hammer cases and their progeny, every one of them involved lawyers who were instigating litigation. And instigating litigation on the basis – in some situations, there was a statutory fee to be expected. And then a claim for fees aside from that statutory fee expectation. And in other instances, these lawyers were instigating fees, instigating cases on a wholesale basis, seemingly doing nothing else. And making an industry out of filing litigation and getting fees. Sometimes double fees. Well, that's certainly understandable. That's certainly a situation to be looked closely at, if not prohibited. What does that have to do with a lawyer who is defending himself and must take time from his own practice to defend himself against allegations that have no merit, no validity, no logic, and not be paid, keeping track of his time? Counsel, if a doctor gets sued and chooses to represent himself, say it's a frivolous case, or a plumber gets sued and represents himself and it's a frivolous case, can they recover for their time that they spent in defending their case? Well, I don't know. I'm not sure that a doctor would take time away from his medical practice to defend himself. Or it could be any professional, any person. Could be. I understand. I understand the logic. And that's certainly a frustration that is expressed about our judicial system. But in this situation, that a lawyer is taking time from his practice to defend himself against a plaintiff who files pro se also, it seems to me to be there should be some consideration to the position that that defending lawyer is in, responding. Taking nothing away from a doctor, the plumber who does pro se, performs a pro se defense of himself. But the lawyer is particularly vulnerable to this kind of pro se lawyers, specious allegations, and he's got to do something. And the question is, must he hire someone for this? Now, let me concede this. I will say this. If this matter was of such danger that it would Mr. Gray, don't get too far away from the microphone. Sometimes we lose you on the microphone. Okay, I'm sorry. If this matter was such that it was so involved and its complexities were such that only serious devoted time would acquit it, and it went to trial, for example, and there was a jury trial and so forth and so on, I might see where a lawyer may be appropriate. But here, the knowledge about this now situation was so clear to anybody in my position that the matter was dealt with summarily by motions to dismiss. Mr. Gray, can we hone in on, now I see your light goes on. Could we hone in on the 137 sanctions and whether or not that has any import here, the punitive nature of 137? Is that part of your argument? Yes, it is. 137 certainly applies here because 137 is for the specific purpose of discouraging frivolous pleadings. And while 137 does not seem to be clearly annotated by cases such as mine, the court could not find a case that specifically signals such pleas, but she couldn't find one that disallowed them. And no one yet has found one, especially in Illinois. So 137 is specifically for the purpose of disallowing such pleadings, and if this kind of claim being made by me is not understood, then persons like the plaintiff in this case can file these kinds of actions and not be subject to 137 as they properly ought to just because the defense was gross. And I don't think that's what the legislature had in mind in terms of 137. 137 should broadly discourage specious pleadings, frivolous pleadings, and the narrow fact situation respecting the nature of the response and whether or not that person was pro se should not matter. So I would certainly ask that this court affirm the trial court. The trial court has dealt with the facts of the matter, but certainly – and you see, the thing about the trial court – in other type of cases, but why should we allow them in 137 cases? It's like a sanction upon a sanction, right? Well, 137 allows for the sanctions. Right. If we don't allow attorney's fees in other instances, like Hamer and his progeny with respect to some of them representing themselves, if we differentiate from that just because it's 137, isn't that the attorney's fee is just like another punitive aspect of it? You get your sanction, now you get the attorney's fees. Well, the differentiation, though, as I said earlier, is that Hamer and his progeny all deal with lawyers who instigate litigation. The instigation of litigation is very important. Your time has expired. Can you wrap it up? Yes, I will. Thank you. I'm sorry. And so I would certainly ask that this court reverse the appellate court's determination that the fees are not applicable, because I think what the appellate court was actually saying is that inasmuch as Hamer exists and his progeny exists, and the different fact situation that your case, Gray, shows makes us feel that we would be maybe improper if we overlooked Hamer, but that the Supreme Court is the proper party, the proper forum for such a claim to be made and for such a change to take place. Thank you. Ms. Woods? Your Honors, may it please the Court, my name is Tanya D. Woods, and I am appearing on behalf of the respondent, FLE, Gerald S. McCarthy. It's certainly our position that while sanctions should have never been imposed in the first place, relief in this case in the form of awarding Mr. Gray attorney fees in any amount is absolutely improper. Your Honors, this case turns on whether or not in Illinois we will continue to rightfully deny pro se attorney litigants recovery of attorney fees in any and all cases, as this court has consistently done, not by automatic or mechanical application of policy, but rather through thoughtful, deliberate, mindful approach to each case, all ending with the same outcome. We assert that this is where the lower court actually got it right. The appellate court ruled here justly that following Hamer and his progeny, and more importantly, Kehoe afterwards, that more tellingly attorney fees for pro se litigants is absolutely improper. But more recently, this body reemphasized in People x Rel Shad Guyman that no attorney fees under any circumstances should be awarded. To answer your question, these cases that you've been discussing, certainly Shad, certainly the others that you've mentioned, the attorneys in question were the plaintiffs in the case, correct?  And are there any cases that deal with this issue in the procedural posture we're in here where the attorney is the defendant? There are none, and Mr. Gray would suggest that that creates somehow a vacuum in our case law. And it is our position that there is no such vacuum, because the rulings have held that regardless of whether or not the litigant is bringing the case or defending the case, that it should not matter. That there should not be a special carve-out for Rule 137. There should not be a special carve-out for pro se attorney litigants. But we should continue to follow the rule as we always have done in Illinois, stating that a pro se attorney litigant is not entitled to fees. I apologize. I'm sorry to interrupt you. No. Your light will go on eventually. These cases are very policy-driven. In fact, this whole idea is policy-driven. Indeed. The policies that were stated in Hammer, et cetera, how do those policy ideas fit into the role here of the lawyer who is a defendant? Thank you for bringing that up, because indeed the policy concerns are many here in this issue. And I'll just mention a few. When a pro se litigant that is also an attorney represents himself, he's deprived of independent judgment. That is one concern that we have. We also say that he's not barred from seeking out counsel should he decide to do so. There's nothing that says that he cannot seek out an attorney to advise him in these matters. We also say very clearly that, as Your Honor pointed out, we don't allow plumbers and doctors and other professionals to recover fees. So why would we make an instance in this case? If anything, we should be the example. Thirdly, I would point out, and more importantly, where will the system of checks and balances come from? How will we monitor and police if we start to allow attorneys to recover attorney fees? I'm the attorney and I'm also the client and I have a dispute over a line item in the bill. I wonder who will win that argument. So how will we go about, as a body and as a legal profession, making sure that there are no improprieties? Additionally, how do we prevent the floodgates from opening for individuals to pursue Rule 137 sanctions, only with the hope of knowing that they might possibly be awarded attorney's fees? I do not think that those are the types of cases that we would want to start to hear, but I can pretty much guarantee that we will start to see those. And what will prevent attorneys then merely seeking sanctions, knowing that this court had then ruled that attorney's fees would be allowed? Those are some, but a few of the policy concerns. I could certainly go on and talk about others. The unethicalness and unreasonableness of certain bills that attorneys may bring to court. And I'll use the present case as an example. Let's talk about, for a moment, fees being unreasonable. Our regulations tell us as attorneys that we are not to pad our bills. We are not to amalgamate a myriad of tasks into one line item. We are supposed to accurately account for our time, as Mr. Gray says he has dutifully done, but yet his bill shows instances where he has estimated his time. And we know that that is also not allowed. Mr. Gray omitted the fact that in this case he's asking, actually, now for the original amount to be awarded to him, almost $13,000, even when the Pantley Court awarded him only $9,000. So he has even asked this court to do something that was not allowed or permitted in the lower court. Let's talk about the unethicalness about a pro se attorney litigant bringing his own bill. As we talked about, as I mentioned before, we don't allow padding. We don't allow an attorney to either list a myriad of clerical skills or tasks or research in his bill, as Mr. Gray has done. Just a question. In any other case where an attorney, not a pro se attorney, but an attorney files their time records to justify their request for fees, the court is intervening in that. And the court reviews each one of these. So there is some kind of check on the request for fees. Why wouldn't that work in this situation? I'm sorry, Your Honor. It is not my assertion that there could not be a possibility where it could be where that might work. What I am concerned about is if we start to carve out this instance, that then we will have even many more instances where the court will have to review a bill. That might be voluminous in nature. As Mr. Gray pointed out, this is a familiar case. It is relatively small in nature as opposed to some of the ones that might be heard by this body or others. I can only imagine how taxing on our court's resources that that may be if we start to then allow attorneys to bring not only their bills for 137 motion for sanctions, but for others as well. So while currently we allow for the court to examine a bill very carefully on a case-by-case basis, I would venture to say that we would more appropriately begin to tax in a way that we don't want if we allow for attorneys to do so in this instance. So, yes, that does exist. Yes, Your Honor. If Mr. Gray had hired a lawyer, the same judge who looked at his bill would have looked at Mr. Gray's lawyer's bill. So how could that be that there would be that many more? So every pro se who brings a case could also be hiring a lawyer and it would be the same amount of situations. I do not disagree, Your Honor, that there would still be that taxation on the court, but I think it's a taxation that we would not necessarily want to open the floodgates to allow. So it's my position that, yes, you're absolutely right, whether he's representing himself or if there's an attorney representing him, the review still has to be done. What I am suggesting is that we don't even allow that door to be opened, that we don't even allow that Pandora's box to open in the first place by permitting pro se attorney litigants to bring their bills originally. It seems Mr. Gray is asking us to carve out a limited exception, and that is when an attorney is being sued as opposed to being a plaintiff in a case. Would you agree with that? I do not, Your Honor, and my reasons why is that when we begin to start to carve out special exceptions, we are risking a very slippery slope. We have very established, credible, highly revered case law in the State of Illinois that says we do not stand for pro se attorney litigants under any circumstances, whether they instigate the claim or they are defending themselves to recover fees. I thought you said earlier there were no cases where there was a pro se defendant in this situation. Right. So my only point was in referring to the recent case in September of 2018, the State Expo, where the holding, as I understood it, said while we may not have a case that's been brought by a defendant pro se litigant, that the holding of this body says that we still are not going to permit those fees. So it is Mr. Gray's assertion in his pleadings that there's this vacuum or this absence of case law in this regard, and so we should fill the vacuum. It's my position or our position, however, that while we have not had a defendant pro se litigant bring a case until now, that there is no such vacuum. We should continue, not in the automatic or mechanical way as Mr. Gray suggests in his briefs, but in one that is thoughtful and deliberate and mindful that says this is what we stand for for public policy reasons, starting with Hamer and continuing on through last year. And this is a position and a holding that's been supported at the U.S. Supreme Court level as well that we saw in Kay, that is cited also in our pleadings, Your Honor. If I may, I'd like to turn our attention to the second reason why we're here. The first was being the attorney's fees, and the second is being the relief that Mr. Gray seeks under Rule 375. The burden under Rule 375 suggests that if after consideration of an appeal or other action, that it's determined that the appeal or other action is itself frivolous, was not taken in good faith, or for an improper person to harass or cause unnecessary delay, that an appropriate sanction may be imposed. In this instant case, there is no such frivolous or improper case. The appellate court saw fit to hear Mr. McCarthy's pleadings and his complaint. Mr. Gray would have you believe that this case comes from Mr. McCarthy being, suffering from sour grapes about not getting his proper beneficial share. And that is not where this case comes from. Mr. McCarthy is entitled to a beneficiary, a beneficial share, has accepted that share, but unfortunately the trustee nor the trust attorney has netted out any of those assets to date. As Mr. Gray mentioned, this case has gone on for quite some time, many years, and none of those assets have been distributed, including to Mr. McCarthy. That's what this case is about. It is a sad and unfortunate circumstance that the beloved friend of Mr. McCarthy took his own life. But he set aside a gift to give to Mr. McCarthy, and it was only in his deal in pleading with the successor trustee, with the trust attorney, Mr. Gray, that those assets be distributed. When they were not, he sought the help and assistance of the court as a reasonable person would do. When that help did not come, he accepted the rulings of the lower court in the Pantley Court that said that his pleadings were overzealous, and while he was not given an opportunity to amend his pleadings, he was sanctioned. Those sanctions included an award of attorney's fees, which we believe runs counter to the case law here in Illinois. So we're here before you now asking that the appellate court ruling to not award attorney's fees be upheld, but more importantly as it relates to now this Rule 375 request for sanctions is completely out of order. The appellate court found Mr. McCarthy's claim to be valid. It heard his claim, and, in fact, it affirmed and ruled in favor with Mr. McCarthy in parts and with Mr. Gray in parts. Mr. Gray, being unsatisfied with that, has now brought to this body a request for further sanctions and further attorney's fees under Rule 375, which we believe do not apply. It is our position, then, that we are humbly asking this body to affirm the appellate court's ruling in not awarding Mr. Gray attorney's fees, and we also ask that he be denied his request for relief under Rule 375, and that finally that this body award Mr. McCarthy any form of relief that it justifies as proper, fair, and just. I do believe I may have been remiss in asking for my five-minute rebuttal, but if there are no questions... There seem to be none. I will take my seat. Thank you. And there is no rebuttal. Mr. Gray will answer. Yes, it is true. A lawyer could have been hired by me. Presumably, if that lawyer had been hired, all those fees that I incurred by virtue of his work would have been reimbursable. Fine. But that fact does not impose upon this court to ignore the fact that Mr. McCarthy, he does not ignore the rationale of allowing attorney's fees to a lawyer who is defending himself and doesn't hire a lawyer. Hiring a lawyer is an act that could have been done, but the point is the lawyer is defending himself against what turned out to be frivolous pleas, and that he didn't hire a lawyer should not preclude the reimbursement of those fees. And however those fees are addressed, they are going to be reviewed by a court. They're not automatic. There's no floodgate opening. Nothing is going to happen anymore than it would normally happen. Specious claims or fees should be stopped at the trial court level and will be stopped. And if they were specious in my instance, Judge Patlet would have stopped them here. She found them to be meritorious. I don't know that that was her point, though, Mr. Gray. I think opposing counsel's point was that if we allow pro se to recover fees in this 137 action, there will be more 137 actions. Well, there will be 137 actions as they arise, I presume. I don't see them being encouraged along because pro se lawyers can get fees. The pro se lawyer will have to show the validity of his position. And it seems to me that if he's being sued, if he's defending himself, he has a right to do that. And he shouldn't necessarily have to hire a lawyer, especially on a case whose facts are narrow as this one. I don't see any floodgates opening because a lawyer is defending himself against frivolous pleadings. And the frivolous pleadings is one of the watchwords of 137. It's only logical that such a fee position be acknowledged by this court. And it hasn't been. It's understandable. This kind of fact situation will arise very rarely. I don't see it happening very often. I got a call last week, however, a lawyer brought to me a situation where he said, how's your case coming along? I said, I don't know, I don't know. He said, well, I have a situation where my malpractice carrier refused to defend me. I defended myself because I didn't have the money for it, and I'm in the same situation. But there's no floodgate occurring to occur. These cases will come as they will. Now, the clerical skills bit about her complaint about me have been dealt with by Judge Towner. We're not here about that. We are here about fees. And with respect to fees, Mr. McCarthy filed the appeal again with a modicum of reason. All those trial court levels would have been stopped if he had done a modicum of reason. A modicum of two would have shown him the appeal was specious. He filed the appeal based on the same specious, frivolous allegations, and therefore the appellate position that he took is also frivolous, which to me, and I think to you, should invoke Rule 375. I ask for your attention. Along those lines, please. Thank you. Thank you. Case number 123622, McCarthy v. Reynolds Trust, Marvin Gray, will be taken under advisement as agenda number 13. Before I excuse you, I want to clarify something. I didn't fully understand your request for rebuttal. In the case just before us, there were two cases that we consolidated. So both parties were appellants, and both parties had time for rebuttal, and they agreed on the five minutes. So normally our rules provide for 20 minutes to argue from the appellant, 20 minutes from the appellee, and 10 minutes of rebuttal. Thank you. Mr. Gray and Ms. Woods, we thank you for your arguments this morning. You are excused, but thanks.